UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SANDRA ROBINSON,

                                        Plaintiff,

        v.

                                                        Civil Action No. 3:10–CV–9

THE NIELSEN COMPANY, LLC,

                                        Defendant.

**MEMORANDUM OPINION**

        The parties in the above-entitled civil action appeared before the Court for a non-jury trial on Wednesday, November 9, 2011.     The Court heard arguments and the testimony of four witnesses.     The Court also reviewed a number of documents submitted by the parties and admitted by the Court as marked exhibits.     Based on a thorough review of all relevant evidence, the Court makes the following findings of fact and conclusions of law.

Findings of Fact

1. The Plaintiff, Sandra Robinson, is an African-American female.

2. The Defendant, The Nielsen Company (US) LLC, is a provider of television audience measurement and related services in the United States and Canada.     Their local ratings services estimate audiences for each of approximately 210 television markets in the United States.

3. One of the markets served by Nielsen is the Richmond, Virginia metropolitan area.

4. The Plaintiff, Sandra Robinson, first applied to work at Nielsen in March of 2007.

1

5. Robin Oldt and Teri Vandelly interviewed the Plaintiff and decided to hire her as a Membership Recruiter for the Richmond, Virginia area.

6. Plaintiff accepted Nielsen's job offer to her on April 4, 2007.

7. When Plaintiff came to work for Nielsen, Robin Oldt became her supervisor.

8. At the time of the interview, Teri Vandelly was the Membership Manager for the Northeast Region and was Ms. Oldt's supervisor.

9. Nielsen employs certain individuals as Membership Recruiters.     Nielsen trains Membership Recruiters to visit the households of preselected individuals to persuade them to become members whose viewing habits will be monitored to help establish audience estimates.

10. Most Membership Recruiters work out of their own homes with very little direct supervision.

11. Nielsen typically provides Membership Recruiters who work out of their own homes with a laptop computer and a company vehicle.

12. Nielsen also provides its Membership Recruiters with a credit-card that can be used to purchase oil and gasoline for those vehicles.

13. Nielsen permits its Membership Recruiters to use their company vehicles for personal driving, including vacations, anywhere in the continental United States.

14. Because of federal tax law, Nielsen must assess its employees for their personal use of the company cars.

15. Under Nielsen's policy, a quarterly formula was used to determine the amount a Membership Recruiter had to pay to reimburse the company for the personal usage

of the company car.     Essentially, the higher the ratio of personal miles to business

miles, the more the employee has to pay for the personal use of the car.

16. Each pay period, Nielsen deducted a preset amount from the Membership

Recruiter's compensation to help defray the charges associated with personal use of

the automobile.     If the personal use charge exceeds the amount deducted, the

employee must reimburse Nielsen for the difference.     Plaintiff had a "Lease Car"

amount deducted from her paycheck every pay period.

17. Plaintiff attended Membership Recruiter training at Nielsen's facility in Florida

starting April 23, 2007.

18. At the Florida training, Plaintiff received instruction on recruiting techniques, the

use of time track, and other items relevant to her employment at Nielsen.

19. Nielsen's Membership Recruiters are paid an annual salary plus overtime

compensation.

20. Because most Membership Recruiters work out of their homes, they are required to

submit the hours they spend working utilizing the Company's Time Trak system.

21. To utilize the Time Trak system, the Membership Recruiter must log in using the

company computer provided to her, as well as her personal password.

22. Once logged in, the Membership Recruiter is required to enter the amount of time

she spent working on each day of the week, and to code that time to indicate what

activities she was engaged in.

23. The Membership Recruiter also is required to enter into the Time Trak system the starting and finishing mileage each day on the company car provided to her, as well as the amount of time spent driving for personal reasons and for business reasons.

24. Once a week, the Membership Recruiter must send her supervisor a copy of her Time Trak entries so that the supervisor can review the entries.    Because most Membership Recruiters work independently, it is frequently impossible for supervisors independently to verify the information employees supply to them on Time Trak each week.

25. Once the information is submitted to Time Trak, Nielsen pays the employee based on the recorded overtime hours worked and determines the charge for personal miles based on the reported personal miles driven by the employee.

26. In April 2007, Plaintiff received additional training known as "pre-week training" by participating in ride-a-longs.    During "pre-week training," the Plaintiff accompanied Nielsen employees as he or she went about a normal work day visiting households and recruiting individuals and families to participate in Nielsen's rating service.    Use of the Time Trak system was also a part of the "ride-a-longs" training process.    One of the individuals who trained Plaintiff during "ride-a-longs" was Cassandra Eberhart, a white female, non-management employee.

27. At the end of April 2007, Ms. Oldt heard from another employee that Plaintiff was not happy with certain conversations she had with Ms. Eberhart during her training regarding racial issues.

4

28. Plaintiff never made any complaint to Ms. Oldt regarding Ms. Eberhart's behavior or any statements made by her.     Armed with the hearsay information from the third party employee, Ms. Old sought out Plaintiff to investigate the matter.     Plaintiff explained to Ms. Oldt that she was very uncomfortable with the way in which Ms. Eberhart supported radio personality Don Imus' statements regarding Rutgers Women's basketball team.

29. Even though Plaintiff told Ms. Oldt that Ms. Eberhart's statements were "no big deal" and that she was not upset by them, Ms. Oldt took corrective action.

30. Ms. Oldt removed Ms. Eberhart from Plaintiff's training process and directed Joan Haskins to complete Plaintiff's training.     Ms. Oldt also instructed Plaintiff to report any subsequent statements that made her uncomfortable or that she felt were discriminating or harassing.

31. On or about April 23, 2007, Plaintiff certified that she had received and reviewed Nielsen's policies and procedures.

32. On or about May 4, 2007, Plaintiff certified that she had received and understood Nielsen's automobile policies and Nielsen's Personal Use Charge Policy for the company vehicle that would be supplied to her.

33. Plaintiff completed her training at Nielsen's facility in Oldsmar, Florida on May 4, 2007.

34. Plaintiff was assigned a company car on May 11, 2007.     Plaintiff used this car until she returned it to Nielsen on October 15, 2007.

35. On August 1, 2007, Ms. Oldt had to reprimand Plaintiff for failing to give advance notice of personal leave on two different occasions during the last week of July 2007.

36. In late August 2007, Plaintiff was ranked 37th out of 52 Membership Recruiters and was deemed not eligible for a pay raise because of her poor performance.

37. On September 4, 2007, Ms. Oldt counseled Plaintiff for turning in an audit with errors and requesting that Plaintiff take sufficient time to insure that documentation was entered properly.

38. On September 5, 2007, Ms. Oldt discussed Plaintiff's lackluster performance in a telephone call.

39. On September 6, 2007, Ms. Oldt emailed Plaintiff.    In this email, Ms. Oldt noted that Plaintiff was not performing up to her targets in any area.    Ms. Oldt informed Plaintiff that she would implement a Developmental Improvement Plan to work on improving her production.

40. On September 7, 2007, Ms. Oldt scheduled Plaintiff for a ride-a-long on September 25, 2009.

41. On September 9, 2007, Ms. Oldt communicated with Plaintiff to inquire about how she had gathered information about a prospective household over the phone.

42. By telephone call on September 17, 2007, and email on September 18, 2007, Ms. Oldt and Ms. Vandelly informed Plaintiff that her decision to recruit the household in part over the phone and to enter generic information for unanswered questions was a "violation of recruitment policies and procedures."    Ms. Oldt also instructed

6

Plaintiff that if she was ever unsure about any aspect of her job, she was to stop all work and contact either Ms. Oldt or Ms. Vandelly before proceeding.     Ms. Oldt also instructed Plaintiff to comply with all policy and procedures.

43. Also on September 17, 2007, Ms. Oldt noted that Plaintiff had not met her production goal of signing three households in a week and inquired as to why Plaintiff only worked 35 hours that week.

44. Ms. Oldt conducted the previously scheduled ride-a-long with Plaintiff on September 25, 2007.

45. At the end of the ride-a-long, pursuant to standard procedure, Ms. Oldt inspected the company vehicle that Plaintiff had been using.     During the course of this inspection, Ms. Oldt determined that the mileage on the vehicles odometer did not match the mileage Plaintiff was reporting on Time Trak.

46. Ms. Oldt began to investigate Plaintiff's Time Trak mileage entries.     For example, Ms. Oldt compared Plaintiff's reported business mileage on Time Trak with the mileage reported on MapQuest for travel to the locations Plaintiff was reporting on Time Trak.

47. Ms. Oldt discovered that from July 30, 2007, to September 28, 2007, Plaintiff reported excessive business mileage for her business trips on eight different occasions.     For example, on July 30, 2007, Plaintiff recorded 130 business miles on Time Trak for a trip which, according to MapQuest, should only have taken 35 miles. Or, again, on September 28, 2007, Plaintiff recorded 242 business miles for a trip that should only have taken 63 miles.

7

48. In Nielsen's experience, when an employee routinely overstates her business mileage, she is attempting to hide personal use of the company vehicle and avoid paying the cost associated with that use.

49. In her investigation, Ms. Oldt also discovered that Plaintiff had not recorded any personal or business miles in Time Trak during a vacation from August 26, 2007 to August 31, 2007.    Yet, on August 26, 2007, Plaintiff filled up the company car with gas at a station on Jefferson Davis Highway in Richmond, Virginia, and approximately four hours later on the same day, she filled the car up again at a gas station located in Dillsburg, Pennsylvania.

50. Plaintiff had previously demonstrated that she was aware of how to record personal miles on Time Trak.    On June 23, 2007, Plaintiff recorded 29 miles on Time Trak. On August 2, 2007, Plaintiff recorded 7 personal miles on Time Trak, and on August 19, 2007, she recorded 120 personal miles on the same system.

51. On September 28, 2007, Ms. Vandelly received the Nielsen letter informing Plaintiff that her "annual performance review indicates that your overall performance did not meet expectations."

52. While Ms. Oldt was investigating Plaintiff's falsification of her Time Trak entries, Nielsen had a meeting for its Membership Recruiters held in Tunica, Mississippi on October 1 and 2, 2007.    Plaintiff was one of the individuals who attended the meeting.

53. On October 3, 2007, Plaintiff informed Ms. Oldt that an employee had made a comment during a social gathering on October 1, 2007, that made the Plaintiff feel

8

uncomfortable.    Plaintiff claimed that she had been speaking with an employee named Michael Richards, when they were approached by a female employee named Iy Jae Hae Burgess.    Ms. Hae Burgess is one-half African American and one-half Korean.    Plaintiff claimed that Ms. Hae Burgess stated to Mr. Richards, "I am beginning to think that you like chocolate!"    Plaintiff also claimed that she believed that the term "chocolate" referred to her.

54. Ms. Oldt responded to Plaintiff's concern by stating that Nielsen did not tolerate harassment of any kind and that she would speak to Ms. Hae Burgess' supervisor.

55. Ms. Oldt spoke to Lori Spradlin, Ms. Hae Burgess' supervisor, and informed her of Plaintiff's concern.    Ms. Spradlin reported to Ms. Oldt that she spoke to Ms. Hae Burgess and cautioned her to not make statements that might make others feel uncomfortable even if the statement was acceptable to Ms. Hae Burgess.

56. Ms. Oldt discussed her concerns about Plaintiff's mileage reports on Time Trak with Ms. Vandelly who suggested that Ms. Oldt retrieve the gasoline receipts for Plaintiff's company gasoline credit card as a way to verify the mileage.    On October 5, 2007, Ms. Oldt received the gasoline receipt that demonstrated that Plaintiff had been driving her company car for personal use while on vacation in August 2007.    Ms. Oldt discussed all of her findings with Ms. Vandelly and they agreed that they would have to terminate Plaintiff unless she could offer a satisfactory explanation for false entries on Time Trak.

57. On October 8, 2007, Ms. Oldt contacted Jim Sowatzke, a Human Resources Manager at Nielsen, to inquire as to how to proceed with Plaintiff.    Mr. Sowatzke directed

Ms. Oldt to provide Plaintiff with an opportunity to explain the discrepancies.    On

October 8, 2007, Ms. Oldt telephoned Plaintiff to set up a meeting with her and Ms.

Vandelly.    Ms. Oldt also informed Plaintiff that she faced possible termination

because of policy violations involving a discrepancy on Time Trak.

58. During this telephone conversation, Ms. Oldt explained to Plaintiff that there was a

discrepancy between the mileage she noted during the ride-a-long on September 25,

2007, and the mileage recorded on that date on Time Trak.    Plaintiff responded

that she was not keeping good records regarding her mileage.

59. Ms. Oldt then asked Plaintiff if she had ever used her company car for a personal

trip.    Plaintiff responded that she had not.    When asked why the gas receipts

showed that she had filled her car with gasoline in Dillsburg, Pennsylvania, Plaintiff

suddenly remembered that she had, in fact, used the car for a personal trip in August

2007.    When asked if she knew how to enter personal mileage into Time Trak,

Plaintiff claimed that she was unable to do so.

60. Ms. Oldt requested an in-person meeting with Plaintiff.    Plaintiff then claimed that

she was too ill to attend such a meeting.

61. On October 9, 2007, the day after learning that she faced termination for her

misconduct, Plaintiff emailed Ms. Oldt and stated that she was following up on the

statement that was made in Tunica.    This was Plaintiff's first written statement of

concern about what Ms. Hae Burgess had said to her.    Later on the same day,

Plaintiff stated that she wanted Ms. Oldt to file a formal complaint regarding the

incident.

62. On October 10, 2007, Plaintiff telephoned and emailed Nielsen's Associate General Counsel, Lois Burke, and complained about the statement in Tunica and the statements several months earlier made by Ms. Eberhart.    Plaintiff also complained that she was being pressured to meet with Ms. Oldt and Ms. Vandelly even though she was ill.

63. Although she claimed to be too ill to meet with Ms. Olds and Ms. Vandelly, Plaintiff told Ms. Burke that she could speak with her on October 10, 2007, about her complaint.

64. Mr. Sowatzke contacted Plaintiff on October 10, 2007, to follow-up on her complaints.    Plaintiff reiterated her complaints about Ms. Eberhart and Ms. Hae Burgess.    Mr. Sowatzke interviewed Mr. Richards and Ms. Hae Burgess.    That same day, Ms. Spradlin had sent a written reminder to Ms. Hae Burgess to not engage in conversation that others might find to be offensive.

65. On October 11, 2007, despite being too ill to meet with Ms. Oldt and Ms. Vandelly, Plaintiff was able to meet with the Equal Employment Opportunity Commission to file a complaint of discrimination and harassment against Nielsen.

66. Plaintiff complained to the EEOC about the comments made by Ms. Eberhart in early April 2007 and some comments made on a car trip to North Carolina.    Plaintiff also complained to the EEOC about the statement made by Ms. Hae Burgess in Tunica.

67. During Plaintiff's sick leave, Ms. Oldt investigated Plaintiff's claim that she was unaware of how to enter personal mileage on the Time Trak system.    Ms. Oldt

11

discovered that Plaintiff had entered personal mileage on Time Trak prior to her vacation in August 2007.

68. Prior to terminating Plaintiff, Mr. Sowatzke, a Human Resources Manager, reviewed the entire file to insure that Nielsen was in compliance with its legal obligations including its obligations under the anti-retaliation provisions of federal law.

69. Nielsen terminates individuals who it has reason to believe have falsified their records without adequate explanation.

70. On October 30, 2007, Ms. Oldt and Ms. Vandelly met with Plaintiff at her house in Richmond, Virginia.    Ms. Vandelly explained that it was a follow-up to the earlier conversation detailing Plaintiff's Time Trak discrepancies.    Plaintiff argued that there were no discrepancies and that she did not know how to enter personal miles on Time Trak.    Ms. Oldt showed Plaintiff the Time Trak entry that predated her vacation in which Plaintiff had entered personal mileage.    Ms. Oldt also reminded Plaintiff that she had trained her on how to enter mileage on Time Trak.    Plaintiff denied that this training had taken place.    After asking Plaintiff if she had anything else to add, Ms. Vandelly informed Plaintiff that she was being terminated because of the discrepancies in her Time Trak data and her inability to explain the discrepancies.

Conclusions of Law

1. Under Title VII, it is unlawful "for an employer to . . . discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or

12

participated in any manner in any investigation, proceeding or hearing under this subchapter."    42 U.S.C. 2000e-3(a).

2. Plaintiff has the ultimate burden of persuading the Court that she was the victim of unlawful retaliation in violation of Title VII, *Lamb v. Boeing, Co.,* No. 05-1843, 2007 U.S. App. LEXIS 586, at *10 (4th Cir. Jan. 11, 2007).

3. To establish a claim of unlawful retaliation, Plaintiff must show that (1) she engaged in protected activity opposing an action by Nielsen that Plaintiff has objectively reasonable good faith belief is an unlawful employment practice; (2) Nielsen took an adverse employment action against the Plaintiff; and (3) that there is a causal connection between the adverse employment actin and the Plaintiff's opposition. *Coleman v. Loudoun Cnty. Sch. Bd.,* No. 08-1312, 2008 U.S. App. LEXIS 20647, at *8-*10 (4th Cir. Sept. 29, 2008).    Plaintiff cannot meet either the first or the third prong of this test.

4. To demonstrate an objective good faith belief that she was opposing an unlawful employment practice, Plaintiff must demonstrate that she was subjected to sufficiently severe or pervasive conduct that she objectively believed in good faith created an abusive working environment.    *Session v. Anderson*, 719 F. Supp. 2d 650, 654-56 (W.D. Va. 2010).    Isolated comments of a racial nature, even if from a supervisor, are not enough to give rise to an objective good faith belief that the employee is opposing an unlawful employment practice.

5. A single comment referring to Plaintiff as "chocolate" from a self-described half-Black and half-Korean co-worker at a social gathering in Tunica, Mississippi is

not sufficient to give rise to an objective good faith belief of an abusive working environment.    The additional comments made four months prior to the Tunica comment regarding a radio show by Don Imus and intra-racial relationships are also not sufficient to give rise to an objective good faith belief of an abusive working environment.

6.  Plaintiff is also unable to demonstrate a causal connection between her complaints of harassment and her termination.    Nielsen's termination of Plaintiff for the discrepancies on her Time Trak entries and her inability to provide a satisfactory reason for those discrepancies are a legitimate and non-retaliatory reason for the Company's actions.

7.  Nielsen did not have to prove conclusively that Plaintiff falsified her Time Trak entries.    It is only required to have a reasonable basis to believe the allegations in question.    *See Jackson v. Cal-Western Packaging Corp.*, No. 09-20411, 2010 U.S. App. LEXIS 4396, at *9 (5th Cir. Mar. 10, 2010).    Even when a plaintiff denies engaging in inappropriate behavior, the issue is "not the truth or the falsity of the allegation," but whether the employer reasonably believed the allegations and acted in good faith. *Id.*    Nielsen had sufficient evidence to believe that Plaintiff falsified her Time Trak entries and acted in good faith in making the decision to terminate her for this conduct.

8.  Plaintiff is unable to produce any evidence that Nielsen's actions were pretextual. Plaintiff does not produce any direct evidence linking her termination with her

14

complaint.    In fact, the wheels of her termination were already in motion, and she was aware of that before she filed her first formal complaint.

9.  Plaintiff is unable to produce any evidence that other employees who committed similar offenses but did not complain were not disciplined.

10. Plaintiff has failed to make out a case of retaliation in violation of Title VII. Furthermore, Nielsen has provided a legitimate non-retaliatory business reason for terminating Plaintiff's employment.    Plaintiff has failed to prove pretext on the part of Nielsen regarding its stated reason for Plaintiff's termination.

Therefore, Judgment is granted to Defendant, The Nielsen Company (US), LLC.

The Plaintiff is hereby notified of her right to appeal the decision of the Court.    If Plaintiff desires to appeal, she must file a Notice of Appeal within 30 days of the date of this Order.

Let the Clerk send a copy of this Order to all parties and counsel of record.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this   1st   day of December 2011.

15